UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LOVISA and LOIS LOVISA, Individually and on behalf of others similarly situated,<br>　　　　　　Plaintiffs<br><br>v.<br><br>MERRIMACK MUTUAL FIRE INSURANCE COMPANY and<br>CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY,<br>　　　　　　Defendants | Civil Action No.<br><br><br>CLASS ACTION COMPLAINT<br>AND JURY DEMAND |

**INTRODUCTORY STATEMENT**

For years Defendants (in conjunction with a non-party subsidiary/affiliate) have been surreptitiously selling improperly inflated and unnecessary insurance coverage limits to homeowners, reaping millions of dollars in unlawful premiums as a result. Plaintiffs seek to recover these overcharges and to stop Defendants from continuing their unlawful business practices.

Defendants' scheme is a simple one, and well concealed. Instead of basing a home's coverage limit on the estimated cost of rebuilding the home in the event of a total loss, Defendants use an estimate that is some 4.5% higher because it factors in projected debris removal expense. The problem is that debris removal expense is covered by the policy *without* increasing the coverage limit and *without* payment of an additional premium. In sum, Defendants sell coverage limits based on estimates that exceed amounts homeowners will need in order to rebuild their homes *and* to remove debris, resulting in higher premiums. Defendants have succeeded with this scheme because they don't provide estimates to homeowners and don't give homeowners the

1

option of declining the debris removal upcharge. As a result, year after year homeowners unwittingly pay higher premiums for improperly inflated coverage limits.

For years the cost of homeowners insurance has increased at rates significantly greater than inflation. https://www.washingtonpost.com/business/2021/12/27/rising-home-insurance/ The increase has been more acute recently, with an average rise of 12.1% from May, 2021 to May, 2022. https://www.prnewswire.com/news-releases/home-insurance-prices-outpacing-inflation-in-many-states-average-increase-of-12-1-since-last-year-301584394.html. In this economic environment, even relatively small overcharges can hurt. In any economic environment, homeowners deserve to be treated fairly and honestly by insurers.

## PARTIES

1. Plaintiffs Richard Lovisa and Lois Lovisa ("Plaintiffs") are individuals who reside in Coram, New York. They bring this action on behalf of themselves, as well as on behalf of classes of persons similarly situated (collectively, the "Class").

2. Defendant Merrimack Mutual Fire Insurance Company ("Merrimack") is a corporation organized under the laws of the Commonwealth of Massachusetts, maintaining a principal place of business at 95 Old River Road, Andover, Massachusetts. At all relevant times Merrimack has been engaged in the business of selling insurance products in the State of New York and other states.

3. Defendant Cambridge Mutual Fire Insurance Company ("Cambridge") is a corporation organized under the laws of the Commonwealth of Massachusetts, maintaining a principal place of business at 95 Old River Road, Andover, Massachusetts. At all relevant times Cambridge have been engaged in the business of selling insurance products in the State of New York and other states.

4. At all times relevant to this complaint, Merrimack and Cambridge have been members of the Andover Group of insurance companies ("Andover"), which group also includes Bay State Insurance Company ("Bay State").

5. At all times relevant to this complaint, Merrimack, Cambridge, and Bay State have sold homeowners insurance policies covering residential properties located in New York and other states.

6. At all times relevant to this complaint, the business operations of Merrimack, Cambridge, and Bay State in New York, including the underwriting and sale of homeowners insurance policies, have been carried out by employees of Merrimack and/or by persons trained, supervised, and/or controlled by Merrimack. Massachusetts Division of Insurance, *Report of Examination of Cambridge Mutual Fire Insurance Company* (period ending 12/31/19); Massachusetts Division of Insurance, *Report of Examination of Bay State Insurance Company* (period ending 12/31/19). https://www.mass.gov/info-details/doi-financial-examination-reports#2019-financial-examination-reports-

7. At all times relevant to this complaint Merrimack provided all management and administrative services for the business operations of Merrimack, Cambridge, and Bay State. *Id.*

8. Merrimack and its officers and employees formulated, implemented, directed, and/or ratified the underwriting and sales practices of Merrimack Cambridge, and Bay State with respect to homeowners insurance policies sold in New York and other states during the time periods relevant to this complaint. *Id.*

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), the Class Action Fairness Act ("CAFA"), as the matter in controversy exceeds the sum of $5,000,000 (five million dollars), exclusive of interest and costs, and at least one member of the putative class is a citizen of a state different from Defendants. None of the exceptions of 28 U.S.C. § 1332(d) apply.

10. This Court has personal jurisdiction over Defendants because they conduct business in New York by selling insurance products to New York residents, in some cases through insurance agents located in New York.

11. Venue is proper in this District because Plaintiffs and many class members reside in this District, Defendants conduct business in this District, and a substantial part of the acts and omissions giving rise to the claims occurred in this District.

## FACTS

12. Plaintiffs are the owners of a single-family home located at 1 Wren Path, Coram, New York, (the "Property"), where they have lived for over 35 years.

13. For many years Plaintiffs have insured the Property with homeowners policies sold and issued by Cambridge.

14. The core insurance provided by the homeowners policies issued by Defendants covers damage to the insured's home, known as "dwelling coverage" or "Coverage A."

15. "Coverage A" is replacement cost insurance. Generally speaking, "replacement cost" is the amount of money needed to repair or replace damaged property.

16. Defendants established the Coverage A limits for Plaintiffs' policies.

17. Defendants impliedly represented to Plaintiffs that the Coverage A limits

4

established for their policies were based on estimates of amounts necessary to rebuild the Property in the event of a total loss, no more and no less.

18. Defendants established Coverage A limits on the basis of one or more reports ("Reports") generated by a software program owned by non-party CoreLogic, Inc. ("CoreLogic") and licensed to Merrimack and/or Cambridge, known as "RCT Express" (the "Program").

19. The Reports set forth replacement cost estimates for rebuilding homes in the event of a total loss, described as a "reconstruction cost" valuation. A true copy of a typical Report is appended to this complaint as Exhibit A.

20. Generally speaking, a reconstruction cost valuation is a replacement cost estimate that takes into account site-specific and process-related costs that may be incurred in the course of rebuilding a particular home. As CoreLogic's website states: "Current localized costs of labor and building materials are applied to create a cost estimate that is unique to the specific home at the time of the estimate." https://www.corelogic.com/intelligence/determining-reconstruction-costs/

21. In establishing Coverage A limits for Plaintiffs, Defendants relied on valuations in the Reports described as "reconstruction cost with debris removal." These valuations were what they appeared to be – reconstruction cost estimates to which were added amounts representing debris removal expense estimated to be incurred in the course of rebuilding the Property in the event of a total loss.

22. As Exhibit A reflects, the Program can also generate "reconstruction cost without debris removal" valuations. On information and belief, one or more of the Reports on which Defendants relied in establishing Plaintiffs' Coverage A limits set forth both valuations – "with debris removal" and "without debris removal."

23. The "with debris removal" valuations relied on by Defendants were approximately

4.5% higher than the "without debris removal" valuations that were or could have been generated by the Program at Defendants' request.

24. The Coverage A limits of Plaintiffs were approximately 4.5% higher than they would have been had Defendants based the Coverage A limits on "reconstruction cost without debris removal" valuations.

25. Debris removal expense is not covered by replacement cost insurance. This is evident from the plain language of Defendants' policies, which provide benefits for debris removal expense as "additional coverage," i.e., coverage that is *in addition to* Coverage A:

> **ADDITIONAL COVERAGES**
>
> **Debris Removal**. We will pay your reasonable expense for the removal of:
>
> a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss;
>
> .     .     .     .     .     .
>
> This expense is included in the limit of liability that applies to the damaged property.

In essence, this "additional coverage" expands the scope of Coverage A replacement cost insurance by allowing the homeowner to apply unused amounts of Coverage A limits to debris removal expense.

26. Defendants acted deceptively by basing Coverage A limits on estimates inflated by an expense item that is not part of a home's replacement cost and not disclosing this fact to Plaintiffs.

27. Defendants' policies also gave Plaintiffs the right to use an additional 5% of their Coverage A limits if needed to pay for debris removal expense:

> If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

6

28. The "additional coverage" for debris removal expense described in paragraphs 25 and 27, above, were provided under the policies without payment of additional premiums. The cost of said coverage, along with the costs of other "additional" coverages listed in the policies, was factored into the premiums charged by Defendants for Coverage A limits.

29. In addition, uninflated (without debris removal) Coverage A limits were sufficient for the Plaintiffs' needs, because the percentage of such limits that would have been available for debris removal expense (5%) exceeded the percentage (4.5%) by which Coverage A limits were inflated by such expense. This was true regardless of whether Coverage A limits represented 100% of "with debris removal" valuations or some lesser percentages.

30. By way of illustration, the Coverage A limit of Plaintiffs' current policy is $444,500, which Plaintiffs believe reflects a 100% "with debris removal" valuation. Of this limit, approximately $20,000 (4.5%) is the amount of estimated debris removal expense added improperly by Defendants, meaning that Plaintiffs' current Coverage A limit should be about $424,500. The 5% debris removal expense coverage Plaintiffs would receive with this lower limit - $21,225 – obviously exceeds the $20,000 debris removal coverage that Defendants calculated Plaintiffs needed. And Plaintiffs' premium would have been less. Similarly, if Plaintiffs had purchased a Coverage A limit reflecting 90% of a "without debris removal" valuation (because, for example, they determined that the savings from a lower premium outweighed the potential benefits of a higher limit) the 5% of debris removal coverage available to them would have been less than the Program's debris removal estimate but still sufficient for their needs, which factored in the risk of being 10% underinsured for a loss within Coverage A in order to reduce their insurance premium.

31. At no time were Plaintiffs given the option of purchasing Coverage A limits based

on "without debris removal" valuations.

32.     At no time prior to purchasing or renewing their policies were Plaintiffs provided with Reports on which their Coverage A limits were based.

33.     Defendants impliedly represented that Plaintiffs' Coverage A limits were based on the replacement costs of the Property, no more and no less, a representation that was false.

34.     Plaintiffs were defrauded and deceived by being sold inflated coverage limits that were misrepresented as replacement cost insurance and were based on valuations that Defendants knew or should have known were excessive, and by not being informed of relevant facts regarding how their Coverage A limits were determined.

35.     Defendants charged Plaintiffs for Coverage A limits that were improperly, unfairly, and deceptively inflated.

36.     Defendants knew or had reason to know that their conduct was improper, unfair, and deceptive. As insurers licensed to sell homeowners insurance policies in New York, it was reasonable to expect Defendants to be familiar with the nature and scope of replacement cost insurance. For the same reason, it was reasonable to expect Defendants to be familiar with the provisions of the insurance policies they marketed and sold to New York homeowners, which provide the homeowner with debris removal expense coverage at no additional cost.

37.     Plaintiffs paid Defendants' deceptively inflated premiums in order to obtain and maintain insurance for the Property.

## CLASS ACTION ALLEGATIONS

38.     Defendants' acts and omissions set forth above were standard and uniform business practices employed by them and by Bay State in New York during the time period relevant to this complaint. Accordingly, this action is brought by Plaintiffs individually and on behalf of all other

persons similarly situated (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39. Subject to discovery and further investigation, the "GBL Class" is initially defined as follows pursuant to Fed. R. Civ. P. 23(b)(3):

> All consumers who, during the relevant Class Period, paid premiums to purchase one or more Merrimack, Cambridge, and/or Bay State homeowners insurance policies covering New York properties owned by them, which policies' Coverage A limits were based on "reconstruction cost with debris removal" valuations.. Excluded from the Class are the Judge assigned to this case and members of such Judge's staff and immediate family; current officers and employees of Defendants; and persons who have released Defendants for the claims asserted.

A sub-class is comprised of GBL Class members who purchased or renewed one or more homeowners insurance policies from Cambridge, to whom Cambridge is alleged to be jointly and severally liable with Merrimack.

Subject to discovery and further investigation, the "Fraud Class" is initially defined as follows pursuant to Fed. R. Civ. P. 23(b)(3):

> All consumers who, during the relevant Class Periods, paid premiums to purchase one or more Merrimack, Cambridge, and/or Bay State homeowners insurance policies covering properties owned by them in any state except Massachusetts, which policies' Coverage A limits were based on "reconstruction cost with debris removal" valuations. Excluded from the Class are the Judge assigned to this case and members of such Judge's staff and immediate family; current officers and employees of Defendants; and persons who have released Defendants for the claims asserted.

A sub-class is comprised of Fraud Class members who purchased or renewed one or more homeowners insurance policies from Cambridge, to whom Cambridge is alleged to be jointly and severally liable with Merrimack.

40. The "Class Period" for the GBL claim is three (3) years prior to the filing of this action through the date of class certification. The "Class Periods" for the fraud claim corresponds

9

to the statute of limitations in each state where properties are located (which in New York is six years prior to the filing of the action) through the date of class certification.

41. Plaintiffs allege there are thousands of Class members and that the Class is therefore so numerous that joinder of all members is impracticable.

42. There are issues of law and fact common to the Class, which common issues predominate over issues particular to individual class members, including but not limited to:

   a. Whether Defendants and Bay State engaged in a standard business practice of selling Coverage A limits based on "reconstruction cost with debris removal" property valuations;

   b. Whether homeowners insurance policies sold by Defendants and Bay State provided coverage for debris removal expense of up to 5% of the policies' Coverage A limits without the payment of additional premiums;

   c. Whether it was the standard business practice of Defendants and Bay State to not offer Coverage A limits to homeowners based on "reconstruction cost without debris removal" valuations;

   d. Whether Defendants and Bay State omitted material facts about homeowners' Coverage A limits from documents and disclosures provided to homeowners;

   e. Whether the unlawful practices alleged herein are consumer-oriented conduct under GBL § 349;

   f. Whether Defendants and Bay State impliedly misrepresented the bases of Coverage A limits purchased by homeowners;

   g. Whether Defendants and Bay State intended that homeowners rely on their misrepresentations;

    h. Whether reliance by homeowners on the alleged misrepresentations and omissions may be reasonably inferred from the circumstances of the transactions;

    i. Whether the business practices alleged herein violate New York law;

    j. Whether the business practices alleged herein conduct are materially misleading under GBL § 349;

    k. Whether Plaintiffs and Class members suffered harm due to the unlawful business practices alleged herein;

    l. Whether the unlawful business practices of Cambridge and Bay State were formulated, implemented, directed, and/or ratified by Merrimack;

    m. Whether Merrimack is liable to Plaintiffs and Class members;

    n. Whether Cambridge is jointly and severally liable to Plaintiffs and other New York homeowners who have been insured by Cambridge.

43. Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and all other Class members were injured by the same unlawful business practices as alleged herein. All claims are based on the same legal theories, and all claims arise from the same allegedly unlawful conduct.

44. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to a vigorous and successful prosecution of this action, are familiar with the legal and factual issues involved, and have retained counsel experienced in the litigation of consumer class actions, including cases involving unlawful insurance practices. Neither Plaintiffs nor counsel have any interest or conflict that might cause them to not vigorously pursue this action.

45. Defendants have acted on grounds generally applicable to the Class with respect to the matters alleged herein, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since: (a) the economic harm suffered by many Class members is not substantial, hence individual litigation is not economically feasible; (b) the prosecution of separate lawsuits by individual Class members would be inefficient and would entail the risk of inconsistent and conflicting adjudications that could establish conflicting standards of conduct for Defendants; and (c) a class action will avoid repetitious litigation.

47. Plaintiffs do not anticipate any unusual or extraordinary difficulties in managing or administering this case as a class action.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiffs and the GBL Class)

48. Plaintiffs restate all preceding allegations and incorporates them herein by reference.

49. New York General Business Law Section 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

50. Defendants conducted business, trade, or commerce in New York.

51. Defendants deceptively represented the nature, basis, and necessity of Coverage A limits in homeowners insurance policies sold in New York.

52. Defendants omitted material facts regarding the nature, basis, and necessity of Coverage A limits in homeowners insurance policies sold in New York.

53. Defendants' consumer-oriented conduct was deceptive in a material way in that Plaintiffs and other Class members were deprived of information needed to adequately understand and evaluate the nature, basis, necessity, and cost of insurance coverage, thus were induced to pay for coverage limits that were improperly inflated.

54. Defendants' unlawful conduct was carried out willfully, wantonly, and with reckless disregard for the truth.

55. Plaintiffs and other Class members have been injured by paying for insurance coverage limits that were misrepresented and that they would not have purchased had they been apprised of all material facts.

56. Plaintiffs will continue to be injured by Defendants' unlawful conduct. Plaintiffs pay their homeowners insurance premium through their mortgage company, which bills them each month based on the amount of the annual premium.

57. Defendants' conduct violated GBL § 349(a), and Plaintiffs and other Class members have been damaged thereby.

58. The misconduct of Defendants alleged herein constitutes recurring, unlawful deceptive acts and practices in violation of GBL § 349.

59. Plaintiffs and other Class members are entitled to compensatory damages, restitution, interest, and reasonable attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per insurance policy purchased.

## SECOND CAUSE OF ACTION
### FRAUD
**(On Behalf of Plaintiffs and the Fraud Class)**

60. Plaintiffs restate all preceding allegations and incorporates them herein by reference.

61. Defendants sold Plaintiffs homeowners insurance policies with Coverage A limits that were impliedly represented as based on estimates to rebuild the Property in the event of a total loss.

62. Defendants' representations regarding the bases of Coverage A limits were false because those limits were based on inflated "reconstruction cost with debris removal" valuations.

63. Defendants intended that Plaintiffs rely on said false representations.

64. Plaintiffs reasonably relied on Defendants' false representations by purchasing Coverage A limits based on inflated "reconstruction cost with debris removal" valuations, and such reliance can be reasonably inferred from the circumstances of the transactions.

65. Plaintiffs suffered harm by paying premiums for Coverage A limits that were based on inflated "reconstruction cost with debris removal" valuations.

## PRAYER FOR RELIEF

Plaintiffs, individually and on behalf of the Classes, request that this Honorable Court:

**(i)** enter an order certifying the Classes and one or more appropriate Sub-Classes under Fed. R. Civ. P. 23 (b)(3);

**(ii)** enter an order declaring that Defendants are jointly and severally responsible for the costs of notifying Class members of the pendency of this suit;

**(iii)** issue judgment declaring that Defendants have committed the violations of law alleged herein;

**(iv)** issue judgment against Defendants, jointly and severally, awarding monetary damages, including but not limited to any compensatory, incidental, statutory or consequential damages in amounts that the Court or jury will determine, in accordance with applicable law;

**(v)** issue judgment against Defendants, jointly and severally, awarding any and all equitable monetary relief the Court deems appropriate;

**(vi)** issue judgment against Defendants, jointly and severally, awarding

punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

**(vii)** issue judgment ordering Defendants to reduce the Coverage A limits of existing homeowners policies and corresponding premiums so as to comply with applicable law;

**(viii)** issue judgment enjoining Defendants from continuing to engage in the unlawful conduct alleged herein;

**(ix)** issue judgment against Defendants, jointly and severally, awarding Plaintiffs their costs and expenses of suit, including reasonable attorneys' fees;

**(x)** issue judgment against Defendants, jointly and severally, awarding pre- and post-judgment interest to the extent the law allows; and

**(xi)** ordering such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs request jury trial on all claims so triable.

Date:  October 4, 2022                     Respectfully submitted,

**REESE LLP**

   _/s/ Charles D. Moore_
Charles D. Moore
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: 212-643-0500
Email: *cmoore@reesellp.com*

**REESE LLP**
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email:  *mreese@reesellp.com*

15

**QUAT LAW OFFICES**
Kenneth D. Quat (to be admitted *pro hac vice*)
373 Winch Street
Framingham, Massachusetts 01701
Telephone: (508) 872-1261
Email: *ken@quatlaw.com*

*Attorneys for Plaintiffs and the Proposed Classes*